878 P.2d 665

Antonio H. GONZALEZ and Julieta Gonzalez, the natural parents of Ana Julieta Gonzalez, Deceased; and Antonio H. Gonzalez, as next best friend of Laszlo Braun, minor son of Ana Julieta Gonzalez, Deceased, Plaintiffs/Appellants,

v.

COUNTY OF SANTA CRUZ, a body politic, Defendant/Appellee.

No. 2 CA–CV 93–0311.

Court of Appeals of Arizona, Division 2, Department A.

July 29, 1994.

Harold Hyams & Associates by Harold Hyams, Tucson, for plaintiffs/appellants.

Kimble, Gothreau & Nelson, P.C. by David F. Toone, Tucson, for defendant/appellee Santa Cruz County.

## OPINION

FERNANDEZ, Judge.

Appellants Antonio H. Gonzalez and Julieta Gonzalez, the parents of Ana Julieta Gonzalez, deceased, appeal the trial court's order granting summary judgment in favor of appellee, Santa Cruz County, in their negligence/wrongful death action. We affirm.

In reviewing summary judgment, we view the evidence in the light most favorable to the party opposing the motion. *Hill Shafer Partnership v. Chilson Family Trust,* 165 Ariz. 469, 799 P.2d 810 (1990). As Ana Gonzalez was leaving her office located on the GAC Produce Co. property the evening of November 24, 1990 and traveling west on the private roadway which connects the GAC property with Old Tucson Road, her vehicle was struck by a Southern Pacific train and she died shortly thereafter. The private roadway is intersected by the Southern Pacific railroad line which runs north to south. Santa Cruz County owns and maintains Old Tucson Road, which runs parallel to the railroad tracks and a short distance east of them.

In 1972, Southern Pacific, GAC Produce Co., and Apollo Produce Distributors, Inc. entered into a private roadway agreement for the construction, maintenance, signage, and use of a private roadway across the Southern Pacific tracks at the location of the decedent's accident. Santa Cruz County was not a party to the private roadway agreement. It is undisputed that this roadway is not county property and was neither constructed nor maintained by the county.

On January 30, 1984, the county installed a railroad warning crossbuck sign on the private roadway at the eastbound approach to the railroad tracks from Old Tucson Road. Santa Cruz County did not install any other signs at either the east or west approach to

the railroad crossing. Stop signs are posted at both the east and west approaches to the tracks, apparently pursuant to the private roadway agreement. There is no railroad warning crossbuck sign at the west approach to the railroad crossing.

In granting the county's motion, the trial court ruled as follows:

[T]he Court finds that Santa Cruz County did not have a legal duty to place warning signs of any type on the private roadway involved in the instant case. Additionally the Court finds, as a matter of law, that Santa Cruz did not voluntarily assume responsibility, nor did it volunteer in any fashion, to "maintain" or "service" the private railroad crossing on which the collision in this case arose, even assuming for purposes of this motion, that the County placed the round yellow and black advance warning crossbuck sign warning eastbound motorists leaving (County) Old Tucson road that they were approaching a (private) railroad crossing.

## DUTY TO INSTALL WARNING SIGNS

Appellants agree that Santa Cruz County had no duty to install warning signs at the railroad crossing on the private roadway. They argue, however, that the county voluntarily assumed the duty once it installed the warning sign at the east crossing approach and that regulations promulgated by the Arizona Corporation Commission pursuant to A.R.S. § 40–337 became applicable. Specifically they cite Ariz.Comp.Admin.R. & Regs. R14–5–104(A) and (B)(1)(a)[1] which provide that, when the county installs railroad crossing signs on a public roadway, it must install warning signs at "each approach to every crossing." R14–5–104(B)(1)(a). By undertaking to install the warning sign on the east approach of the private road, they conclude, the county assumed a duty to likewise sign

---

1. **A.** The following rules shall apply in the construction, reconstruction, improvement, and maintenance of all public railroad-highway grade crossings within the state of Arizona. This rule is intended to be consistent with the provisions of the Manual on Uniform Traffic Control Devices, as adopted by the Arizona Department of Transportation.
   **B.** Warning signals.

1. Railroad crossbucks.
   a. A railroad crossbuck shall be installed on the right-hand side of the public roadway on each approach to every crossing to warn motorists approaching from each direction, except at crossings where automatic control devices are in use in conformance with Appendix 8.

the west approach on the private roadway. We disagree.

The regulations cited by appellants state that the rules "shall apply in the ... maintenance of all *public railroad-highway grade crossings*" (emphasis supplied) R14–5–104(B)(1)(a) and it is undisputed that this is not a public grade crossing. The regulations define public grade crossing at R14–5–101(13) as "any crossing, used by the general public, for which a legal agreement between a private property owner and a railroad company does not exist." They also define a private grade crossing at R14–5–101(12) as "any crossing where a legal agreement exists between a private property owner and a railroad company for the exclusive use of the landowner and the landowner's invitee."

The record shows that there was a private roadway agreement among Southern Pacific, GAC, and Apollo and that the crossing where the decedent's accident occurred was a private grade crossing as described in R14–5–101(12). Nothing in these regulations required Santa Cruz County to sign both approaches to the private grade crossing at which the accident occurred.

Appellants rely on *Martinez v. State*, 177 Ariz. 270, 866 P.2d 1356 (App.1993), where this court held that, when a county assumes a duty to keep a private road in passable condition for county residents, it further assumes the additional duty to keep the road in reasonably safe condition for travel.

The facts in this case are clearly distinguishable from those in *Martinez*. In *Martinez*, the court found that over a period of years the county had graded a dirt road across private property, thus permitting county residents to use it to bypass a washed-out area of a county road. The court concluded that by this conduct the county had assumed the duty to keep the road passable and reasonably safe for residents, and that because there was evidence of breach of that duty, it was error to direct a verdict for the county. That is not the case here. Between 1972, when the private roadway agreement was entered, and 1990, the county's only activity was posting the round railroad crossing sign in 1984. As the court properly

found, the county neither serviced nor maintained any private roadway.

Further, the court in *Martinez* concluded that a fact issue existed, precluding summary judgment, when the state failed to warn drivers on its highway of a dangerous condition on private property which a driver would encounter soon after leaving that highway. In the present case, it is apparent that the county was attempting to warn drivers of a similar danger upon leaving Old Tucson Road by installing the sign on the private roadway at the approach to the railroad crossing.

Because the trial court correctly concluded that Santa Cruz County had no duty to erect a warning sign at the west approach to the crossing, we affirm the summary judgment.

LIVERMORE, P.J., and LACAGNINA, J., concur.