NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CITY OF FLAGSTAFF, *Plaintiff/Appellee,*

*v.*

DESERT MOUNTAIN ENERGY CORP., *Defendant/Appellant.*

No. 1 CA-CV 21-0168
FILED 3-24-2022

Appeal from the Superior Court in Coconino County
No. S0300CV202000624
The Honorable Cathleen Brown Nichols, Judge

**VACATED AND REMANDED**

COUNSEL

Perkins Coie LLP, Phoenix
By Christopher D. Thomas, P. Derek Petersen, David Treadaway
*Co-Counsel for Plaintiff/Appellee*

TSL Law Group, PLC, Scottsdale
By Lee A. Storey
*Co-Counsel for Plaintiff/Appellee*

DeConcini McDonald Yetwin & Lacy, P.C., Tucson
By Lisa Anne Smith, Sesaly O. Stamps, Tyler H. Stanton
*Counsel for Defendant/Appellant*

---

**MEMORANDUM DECISION**

---

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge Maria Elena Cruz joined.

---

**B A I L E Y**, Judge:

¶1        Desert Mountain Energy Corporation ("Desert Mountain") appeals the superior court's issuance of a preliminary injunction requiring it to apply for and obtain a state permit before operating a well it has constructed in Northern Arizona. For the following reasons, we vacate the injunction and remand for further proceedings consistent with this decision.

## FACTS AND PROCEDURAL HISTORY

¶2        On appeal from an order granting a preliminary injunction, we view the facts in the light most favorable to sustaining the order. *See Lane v. Bisceglia*, 15 Ariz. App. 269, 270 (1971).

¶3        The City of Flagstaff ("the City") owns Red Gap Ranch, located approximately forty miles east of Flagstaff. The City considers Red Gap Ranch to be the only location that can meet its future water needs and intends to use wells there to pump from the Coconino Aquifer.

¶4        Desert Mountain is a public energy company. In 2018, the State Land Department issued a lease to Desert Mountain to mine for helium and hydrocarbon resources on Arizona State Land ("State Land"). The anticipated State Land mine site was approximately 1.5 miles upgradient of Red Gap Ranch. After securing the lease, Desert Mountain and the City entered an agreement allowing Desert Mountain to traverse Red Gap Ranch and access the State Land mine site. In exchange for Desert Mountain providing the City with a copy of any seismic testing data Desert Mountain collected from Red Gap Ranch, the City waived any license fee for the use of its land.

¶5        In 2020, Desert Mountain obtained a permit from the Arizona Oil and Gas Conservation Commission ("AOGCC") to construct Well 1255 on the State Land.

¶6 The City then filed a complaint to enjoin Desert Mountain's State Land mining operation. The City raised multiple claims, including, as relevant here, claims for breach of contract and for a declaratory judgment that Arizona Revised Statutes ("A.R.S.") sections 49-241 *et seq.* required Desert Mountain to obtain an Aquifer Protection Permit ("APP") for the well from the Arizona Department of Environmental Quality ("ADEQ"). After a hearing on the City's request to enjoin operation of the well, the superior court found that Desert Mountain's well permit "indicates that [it] intends to inject materials" in the well and Desert Mountain "*may* engage in well stimulation." (Emphasis added.) The court concluded that under ADEQ regulations, the potential for well "stimulation" required Desert Mountain to obtain an APP under A.R.S. § 49-241. *See* A.R.S. § 49-241(A) (requiring that "facilities that discharge[] shall obtain an [APP]"), (B)(3) (defining an "[i]njection well[]" as a "discharging facilit[y]").

¶7 The court also determined the City was likely to prevail on its claim that Desert Mountain had breached its contract with the City by failing to provide seismic data. The court concluded that this separately supported a preliminary injunction.

¶8 The court entered a preliminary injunction against Desert Mountain requiring, among other things, that Desert Mountain cease well operation "until or unless it obtains all necessary permits, including an Aquifer Protection Permit."

¶9 Desert Mountain timely appealed. We have jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and A.R.S. § 12-2101(A)(5)(b).

**ANALYSIS**

¶10 Desert Mountain argues that the superior court abused its discretion by issuing the preliminary injunction and by excluding testimony based on hearsay during the evidentiary hearing.

I.    Injunctive Relief

¶11 We review the court's decision whether to grant a preliminary injunction for an abuse of discretion. *See Fann v. State*, 251 Ariz. 425, 432, ¶ 15 (2021). The superior court abuses its discretion if it "clearly err[s] in finding the facts or applying them to the legal criteria for granting an injunction," or "applie[s] the incorrect substantive law." *Id.* (citations omitted).

¶12        The party requesting a preliminary injunction must show:

> (1) a strong likelihood of success on the merits, (2) the possibility of irreparable harm if the relief is not granted, (3) the balance of hardships favors the party seeking injunctive relief, and (4) public policy favors granting the injunctive relief.  To meet this burden, the moving party may establish either 1) probable success on the merits and the possibility of irreparable injury; or 2) the presence of serious questions and that the balance of hardships tips sharply in favor of the moving party.  This is a sliding scale, not a strict balancing of factors.  The greater and less reparable the harm, the less the showing of a strong likelihood of success on the merits need be.  Conversely, if the likelihood of success on the merits is weak, the showing of irreparable harm must be stronger.

*Id.* at ¶ 16 (internal quotation marks and citations omitted).

¶13        The superior court based its injunction on two conclusions of law that followed two of the City's causes of action: breach of contract and a violation of A.R.S. § 49-241.  Neither conclusion of law supported the preliminary injunction.

          A.        Breach of Contract

¶14        Injunctive relief is available only where the possibility of irreparable injury is "not remediable by damages."  *Shoen v. Shoen*, 167 Ariz. 58, 63 (App. 1990) (explaining that a party must show "[t]he possibility of irreparable injury . . . if the requested [injunctive] relief is not granted" (citations omitted)).  Here, the City's contract claim arises from its agreement to allow Desert Mountain to traverse City-owned Red Gap Ranch land in exchange for any seismic data collected by Desert Mountain while testing nearby or adjacent State Land.  Even assuming the court properly found the City was likely to prevail on its breach of contract claim, the breach was remediable by damages, i.e., payment by Desert Mountain for either the value of a license to traverse the Red Gap Ranch land or the cost to the City to collect its own seismic data.

¶15        The City even acknowledged the adequacy of damages in its complaint, which alleges that Desert Mountain breached the parties' contract "by completing seismic testing on Red Gap Ranch and failing to share the results of that testing with the City," and that "[a]s a result . . . , the City has been harmed *in an amount* to be proven at trial, but in no event less than the full *amount of licensing fees* it waived."  (Emphases added.)  The

claim thus expressly alleges monetary damages and does not suggest that monetary damages are inadequate to remedy the alleged breach; nor does the claim suggest that the alleged breach relates to the alleged irreparable harm and requested injunctive relief here. *See IB Prop. Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'ship*, 228 Ariz. 61, 65, ¶ 10 (App. 2011) ("[T]he party seeking an injunction must show a possibility of irreparable injury 'not remediable by [monetary] damages'" (quoting *Shoen*, 167 Ariz. at 63)).

¶16 Even if an injunction were an appropriate remedy for the breach of contract claim, such an injunction must be tied to a specific performance of seismic testing, or a prohibition on crossing the City-owned Red Gap Ranch land and not on some other activity that was not contemplated in the terms of the contract. Here, the City claimed a breach of contract because Desert Mountain failed to provide it with data. But the relief provided in the injunction is far removed from any obligation by Desert Mountain to provide data to the City.

### B. Declaratory Relief Under A.R.S. § 49-241

#### 1. The City failed to properly pursue a direct action under A.R.S. § 49-241.

¶17 The superior court alternatively based its injunction on a violation (or potential violation) of A.R.S. § 49-241. But because no § 49-241 claim was properly before the court, the injunction fails here, too.

¶18 Under A.R.S. § 49-241, as relevant here, and with certain exceptions, "any person who discharges [a pollutant into state water] or who owns or operates a facility that discharges shall obtain an [APP] from the director" of ADEQ. *See also* A.R.S. § 49-201(12). Although the court found that Desert Mountain *might* "discharge," the City did not have standing to bring a claim under § 49-241. Section 49-264(A) allows a right of action on § 49-241 grounds only in limited circumstances, none of which are present here.

¶19 Specifically, § 49-264(A) allows "a person that has an interest that is or may be adversely affected by a violation of this chapter" to sue "the director" in superior court "alleging a failure of the [ADEQ] director to perform an act or duty that is not discretionary." The court may then issue an order compelling the director to perform that act or duty. *Id.*

¶20 Here, the City sued Desert Mountain and not the director of ADEQ. Nothing in the plain text of the statute suggests that a right exists

to sue an alleged *violator* rather than the director. Even if we assume that the term "director" somehow also encompasses the term "violator," the statute requires that 120 days' notice be given to both the director and the violator before a suit is filed. A.R.S. § 49-264(B)(1). The City gave no such notice. Finally, the only statutory remedy is a court order requiring *the director* to perform a neglected duty. The superior court considered neither the prerequisites, nor the procedure, nor the remedy prescribed by § 49-264 for a perceived violation of § 49-241. Consequently, the court erred in granting a preliminary injunction on this basis.

> *2.* The cases cited by the City permitting litigation before exhaustion of remedies are distinguishable.

¶21 The parties disagree whether the City was required to exhaust administrative remedies or otherwise proceed with or against ADEQ before bringing the instant action. The City argues that recourse to ADEQ was not necessary before seeking a declaratory judgment under A.R.S. §§ 49-241 and 12-1831, citing our decisions in *Canyon Del Rio Inv'rs, L.L.C. v. City of Flagstaff*, 227 Ariz. 336, 341, ¶ 22 (App. 2011), and *Manning v. Reilly*, 2 Ariz. App. 310, 312 (1965). But this authority is inapposite.

¶22 In *Canyon Del Rio*, the plaintiff brought three claims for relief in the form of a declaratory judgment excluding it from the application of a Flagstaff zoning ordinance, which the trial court dismissed for failure to exhaust administrative remedies. Although we reversed the trial court in that case, citing *Manning*, we cabined our reasoning in *Canyon Del Rio* to a declaratory action seeking relief from "an allegedly invalid zoning ordinance." 227 Ariz. at 341, ¶ 22. Here, the City does not allege that either A.R.S. § 49-241 or § 49-264 is invalid or unconstitutional, and this is enough to put us beyond *Canyon Del Rio*'s narrow scope.

¶23 Our prior reasoning in *Manning* helps to explain this result. In *Manning*, we evaluated whether a plaintiff challenging a zoning ordinance as both improperly enacted and unconstitutional was required to exhaust his/her remedies before bringing an action in court. We determined he/she was not, holding in relevant part that:

> [t]he remedy for attacking the validity of a zoning ordinance is distinguishable from the remedy of securing a variance from a zoning board of adjustment, the former being based on right and entitling a property owner to a court trial on questions of fact while the latter remedy is based on a favor sought and assumes the validity of the ordinance.

*Manning*, 2 Ariz. App. at 312 (citation omitted). We contrasted the questions of fact appropriately brought to a zoning board with the determination of "legal or constitutional questions" that require "judicial determination and are beyond the scope of an administrative body's powers and authority." *Id.* The issue at stake here—whether Desert Mountain requires a permit from ADEQ—is entirely a fact-specific inquiry requiring a high degree of technical expertise, not a question of constitutionality or validity. These cases do not support the City's position.

> 3. The anti-abrogation clause and statutory reservation of rights do not apply.

¶24 The City argues that it has a right independent of the ADEQ statutes to sue for declaratory relief, arguing that this freestanding right could not be abrogated by A.R.S. §§ 49-241 and 49-264. But the anti-abrogation clause of the Arizona Constitution affords the City no relief. Article 18, Section 6, of the Arizona Constitution provides that "[t]he right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation." The anti-abrogation clause "was intended to take the right to seek justice out of executive and legislative control, preserving the ability to invoke judicial remedies for those wrongs traditionally recognized at common law." *Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 9, 17 (1986).

¶25 Although the anti-abrogation clause preserves common law causes of action, such as actions for declaratory judgment, the plain language of § 49-264(A) does not support a direct action against Desert Mountain for violating the provisions of Title 49, Chapter 2. A justiciable controversy for the purposes of a declaratory judgment is one in which a party asserts "a right, status, or legal relation in which the plaintiff has a definite interest and a denial of it by the opposing party." *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 199 Ariz. 43, 45, ¶ 10 (App. 2000) (quoting *Samaritan Health Servs. v. City of Glendale*, 148 Ariz. 394, 395 (App. 1986) (citation omitted)). The purported "right, status, or legal relation" for which the City sought declaratory judgment in this case was Desert Mountain's obligation to seek a permit under A.R.S. § 49-241 *et seq.* and A.R.S. § 49-264(A). Again, §§ 49-241 and 49-264 only authorize suits against the director and provide for enforcement of a regulatory scheme by the director. The City has no "right, status, or legal relation" with or against Desert Mountain based on these statutes, and there was thus nothing to abrogate. The City simply has no standing under the statute to pursue this claim, and enjoining Desert Mountain on this basis was improper.

¶26        Finally, the City points to the reservation of rights clause of A.R.S. § 49-206 as preserving a freestanding right to enjoin Desert Mountain.  But again, the proposed form of order submitted by the City and signed by the court only supplies one basis for such a declaratory judgment: A.R.S. §§ 49-241 and 49-264.  Section 49-206 reserves no claim against a third party under those statutes.  The foundational claim is that Desert Mountain did not acquire the appropriate permit from ADEQ under A.R.S § 49-241 and the City sought a declaratory judgment *on that basis*.  Whatever other "causes of action or remedies" to "suppress[] nuisances or prevent[] injury due to discharges" exist, the City failed to present them in its proposed order. A.R.S. § 49-206.  No legal basis exists for the preliminary injunction.

II.     Evidentiary Rulings

¶27        Although Desert Mountain challenges the court's evidentiary rulings, it does not assert those rulings had any bearing on the court's determination to issue the preliminary injunction; and Desert Mountain has prevailed in any event.  Because we do not issue advisory opinions, we decline to address these issues. *See Velasco v. Mallory*, 5 Ariz. App. 406, 410-11 (1967) ("We will not render advisory opinions anticipative of troubles which do not exist; may never exist; and the precise form of which, should they ever arise, we cannot predict." (citations omitted)).

III.    Attorneys' Fees and Costs on Appeal

¶28        Both parties request attorneys' fees under A.R.S. § 12-341.01(A).  Section 12-341.01(A) gives the court discretion to award fees to the successful party in actions arising out of contract.  The breach of contract claim does not support the preliminary injunction, and an award of fees under § 12-341.01 is not warranted. *See generally Schwab Sales, Inc. v. GN Constr. Co.*, 196 Ariz. 33, 37, ¶ 11 (App. 1998); *see also Marcus v. Fox*, 150 Ariz. 333, 335 (1986) (explaining that "fees are not appropriate based on the mere existence of a contract somewhere in the transaction," and there must be a "causal link between [the] claim and the underlying contract").

¶29        Desert Mountain also requests attorneys' fees under § 12-349(1) and (2), alleging that the City brought claims without substantial justification and to delay Desert Mountain's well project, and arguing the City's claims are groundless and are not brought in good faith because it failed to proceed through the statutorily required administrative process.  We disagree and decline to award attorneys' fees, but we award Desert

Mountain its taxable costs pursuant to A.R.S. § 12-341 upon timely compliance with Rule 21, ARCAP.

## CONCLUSION

**¶30** For the reasons stated, we vacate the preliminary injunction and remand for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:        JT